The next case today is Brad O'Brien v. United States of America et al. Appeal number 22-1014. Attorney Sattin, please introduce yourself for the record and proceed with your argument. Good morning. Again, Adam Sattin for the Plaintiff Appellant. I would respectfully request perhaps one minute of rebuttal time be in this case should be reversed because the individual at the center of this appeal, Dr. Rocha, was not an employee of the federal government acting within the scope of that employment and removal from state court and substitution of the United States as a defendant on the basis that he was a federal employee was erroneous from the outset of the U.S. Attorney's involvement in the case. Counsel, let me make sure that we're speaking from the same basis of facts. As I understand the situation revealed by the pleadings in this case, Dr. Rocha was employed by the health center. The health center was federally funded. It required its physicians to have privileges at a local hospital. Dr. Rocha had privileges at Lowell General. And Dr. Rocha was the on-call obstetrician on the night of these events at Lowell General when the plaintiff's decedent, not a patient of the health center, was brought into Lowell General for treatment. Is that the factual scenario as you understand it? The only distinction, your honor, is the reference to the doctor being the on-call obstetrician. What we know from the materials, the records, is that Dr. Rocha did attend to this patient when she presented in extremis. And what I take issue with is that the admitting privileges required that Dr. Rocha do so and that the contract at LGH in any way required that he participate in periodic hospital call or emergency room coverage, if that answers your question. Otherwise, I agree. And what is there in the record that helps to bear on that issue? Yes, your honor, thank you. The employment contract at page, in particular page 58, but it 58, the sort of scope of the Dr. Rocha's employment and his involvement at Lowell General Hospital is outlined. He essentially is to be at Lowell General Hospital maybe once a week for scheduled operative procedures performed at Lowell General Hospital. These are things that aren't done in a clinic setting, they're the direct patient care setting would be at the clinic. Now, that is really the scope. They point to a requirement in the contract that he obtain privileges at a local hospital, including Lowell General Hospital. However, there is nothing in that. First of all, you would need privileges at the hospital to perform the scope of the employment that is outlined of the scheduled operative procedures, and this is the entire agreement between the clinic and the doctor. There is a five minutes, there is one document that they point to that is the application for those privileges, and this is important because it destroys the concept that they have represented that he was required by LGH or his contract to provide periodic hospital call or hospital emergency room coverage, because at page 70 of the joint appendix, the paragraph in the middle of it says, in case of emergency, any member of the clinical staff shall be permitted and assisted to do everything possible to save the patient's life or to save the patient from serious harm to the degree permitted by his or her license and regardless of staff status or clinical privileges. That is not what has been cited as the requirement, and it's the only citation that the defense gives is to the district court's decision, which likewise does not actually cite and support that, but in no way that statement saying they may help someone who's an extremist is not a requirement of periodic hospital call or hospital emergency room coverage as a requirement of obtaining privileges. It's just nowhere, and so this case was certified by the U.S. attorney that he was a federal employee. It has now been clear, it has now been conceded that he was not. For that reason alone, their removal based on this certification under the Westfall Act, we now know he was not an employee of the federal government, and the defense now wishes, for the first time in their brief in response to all the papers that preceded on that presumption that they had certified him as an employee, they say, well, he can be deemed an employee because the clinic receives federal funds. Except, and Judge Lynch's order prior to the hearing is extraordinarily helpful to this issue, because examination of the statute reveals the federal statute does not does not permit 233 section G extension of coverage unless there has been an after consideration of the application, a determination made that certain reasons would exist why this should extend to care of non-clinic patients. That raises the question, which of course the parties have not had an opportunity to brief, as to whether that application process, whether the Secretary has the authority to subsume that application process by the issuance of a regulation which the Secretary has issued. And my response to that is, of course, they cannot delete the tenant of the federal law. The federal law requires a case-specific application and consideration of it. To accept their position, the statute would make no sense because it says that the consideration and determination shall be made after receipt. It even uses terms like the extension of coverage may only be given after an application is made for the extension of the coverage to non-health center patients. And so with respect to the rest of the statute, if you look at it as a whole, if you look at 233 section I, there's an opportunity for the U.S. Attorney and the Secretary to decline to extend coverage because of things that would impose a greater risk to the government because of an extensive out-of-the-norm malpractice history, disciplinary actions by state governments. That would only happen if there was an actual application, receipt of an application, consideration of it, and a determination made. If they do a blanket to everyone, that is not contemplated by the plain language of the statute. And Judge Salia, did you have further questions? No, I think Judge Lynch that what's here from the government, I think we may want supplemental briefing on this situation, on the way the regulation and the statute interface. All right, Mr. Satton, you have rebuttal time, but think about this issue of further briefing, please. We'll hear from the government now. May it please the court, I'm Dana Kersvang for the United States. There's been a lot of confusion on this and, you know, it's important to cite the right statute, but I do want to be clear it doesn't actually matter to the outcome here. With that said, I'll start with this question of the way the statute and G1, which requires an application, there are there are two kinds of applications that HHS has set out. And one of those is an application for the health center and its employees to be within this deemed to be employees of the Public Health Service for purposes of 233, right? And then there's also, if you're not within the scope of the regulation, then you also need to submit additional information as to every employee of the health center that is going to be treating non-patients and what they'll be doing. But for the handful of situations within 6.64, HHS determined that those always benefit the health center patient to have their doctor be able to treat them in the hospital. As plaintiff acknowledged, it's necessary to have admitting privileges for the doctor to be able to do that. And that benefits the patients because their doctor, their practice can come, they have continuity of care. So HHS said, you don't have to tell us about every doctor at every health center who is going to have patients at health center. We know that benefits health center patients in every case. So there is an application here, right? HHS's decision on that application is at JA 15 and 16. If the health center were doing anything else, they would have to have a particularized determination, right? These two applications are discussed in the HRSA manual at 9 and 10 and at 17. But here, we have something that was within the scope of the regulation. Now, in terms of the process, so we have the prospective decision, right? Is this deemed? And then we have the retrospective determination for the particular thing that happened here. Was it within the scope of their employment with a health center? And that's the argument that plaintiff was making in district court, that borrowed servant argument. I think they've abandoned that argument on appeal. Then the second question is whether the health center was within the scope of its deemed public health service employment. And there, that's a question of federal law determined based on the regulations and the statute. And here, HHS, so that's a determination that the U.S. attorney makes in consultation with HHS. You see at JA 9 in the notice of substitution, we explain that the doctor was acting within the course and scope of his employment pursuant to the federally supported Health Centers Assistance Act of 1995 and Section 42 U.S.C. 238. Counsel, if I may, I'm not an expert in this and I defer to Judge Celia, but the import of your argument is it's irrelevant if the requirement that he get privileges and then he gets privileges, but the not contains no requirement that he do emergency room work. He is permitted to help out, but the basic argument that I understood we just heard was, so at that point, he's not really, because this particular instance of malpractice was not a required service. It was, at best, a permitted service. He was not acting in the interests of the United States. I take it your argument is that's totally irrelevant to this scheme. Five minutes. So, one piece is it's at least irrelevant to this case, but in terms of the statutory scheme to be within the regulation 6.6E4, the doctor needs to be doing periodic hospital on-call or emergency room coverage. That has to be required by the hospital and it has to be a condition of employment. I think that's mentioned. How do we know on this record that Dr. Rocha comes within that specification? So, Your Honor, what we know on this record is that the physician has to maintain admitting privileges at Lowell General. That's a J59. We know he has to remain admitting privileges at a hospital. So, I believe the statute that... I'm sorry, Your Honor. Yeah, go ahead. I believe the contract says a J59, including he has to maintain admitting privileges at a hospital within a reasonable vicinity of Lowell Community Health Center, including Lowell General Hospital. Okay, yeah. And then, he has to comply with all the rules, regulations, and bylaws of the hospital. So, it is pretty standard that hospitals, to have somebody have admitting privileges, require them to participate in the on-call. But do we know what Lowell General required in this case? I've looked for that in the record in this case. If the court thinks that's necessary, you could remand for this issue, but we don't think it's necessary because... No, I'm not. Yes, Your Honor, because of the way this was briefed. So, what happened is the United States said, you know, we are substituting based on 233 and pursuant to Westfall. So, that second part was wrong, but did say it was based on 233. Plaintiff's counsel told us they weren't going to oppose that. That's a J51. So, we didn't paper that up, right? Everything that HHS relied on for that didn't go into the record then because it wasn't going to be opposed. Then, after we moved to dismiss, plaintiffs opposed, but their only argument was borrowed servant. Now, borrowed servant... Well, it's not because of the Westfall argument that the government put in. Isn't that why we have borrowed servant? Aren't you kind of inducing them to reply to that? So, Your Honor, we cited both 233 and Westfall, and borrowed servant is relevant. Not borrowed servant is wrong, but this argument about whether the doctor is within the scope of their employment at the health center is relevant under both statutes. It's the same analysis under state law. That's the part of this that they chose to respond to. But, at this early stage and on this record, how are we supposed to know whether he was within the scope of his employment and what, if anything, Lowell General Hospital required him to do in order to maintain his privileges? So, for scope of employment under state law, that's easy, right? As the district court said, we're looking at were they... the kind of thing he was employed to do within the time and space limits, and at least partly motivated by a purpose to serve the employer, and we have here somebody who was at the hospital treating a patient of the health center when somebody comes in with an emergency, and he responds to that emergency. He doesn't bill for it, right? He's a doctor who has to have privileges at the hospital response to an emergency at the hospital. So, that settles the state law question, which is the only argument that they made below. Now, in terms of the question of whether the doctor was also at the health center, there's two determinations, right? Doctor within the scope of employment at the health center and health center within the scope of the deeming. So, in terms of that second part, we cited 233 without. You see it at JA-9 in our substitution. You see it extensively in our response to their borrowed servant argument. We talked about 233 and also borrowed servant. So, once again, and in response to Judge McElroy's question, you seem to say that the actual employment agreement is totally irrelevant, as is lower general's requirement of all doctors. All that matters is a common law rule about whether, quite broadly, he was within the scope of his employment and whether the health center was acting as a federal agent. I don't quite understand why, on the first point, the two items I mentioned are totally irrelevant. So, they're not totally irrelevant in the abstract. They're just irrelevant to the question that plaintiff chose to pursue below. So, he has to both be within scope of employment under state law, which is the argument that the plaintiff made below and plaintiff has the burden under Deborah at Marine Corps, and it has to be within the scope of the deemed employment. Now, those things are absolutely relevant to whether this is within the scope of what HHS deemed the health center to do. Now, because of the way this was briefed, that stuff didn't end up in the record in this case, and this court can certainly remand for that, but we don't think it's necessary because he was on notice from the beginning that 233 applied to this case, and he didn't choose to make any arguments about 233 in district court. If there are no... So, you're saying he's waived all of these more difficult issues? Yes, Your Honor. He didn't... He... 233 was absolutely one of the things that... Let me ask another question. Are you saying that the argument presented to us about the precise employment agreement that he entered into and its definitions and its scope, that that was not raised in the district court? You're hearing it for the first time on appeal? That was also not raised in the district court. In the district court, he was just arguing borrowed servant. It's only on appeal that he started talking about these particular contract provisions. We do think, though, that the contract provision, because it says he has to maintain privileges at the hospital and comply with the hospital bylaws, and it's pretty standard that hospitals require doctors... Yeah, it may be standard, but as you've said to both of my colleagues, there's no evidence in the record on that. Yes. Okay, any further points? No, Your Honor. If there are no further questions, I ask the court to affirm. Thank you. Thank you, counsel. Attorney Statton, you have one minute for rebuttal. Yes, Your Honor. Just with respect to the suggestion as to what the plaintiff chose to pursue, the plaintiff chose to pursue a claim against Dr. was based upon the certification under the Westfall Act. Under the Westfall Act, it only applies if he's an employee. This was a direct employee, not deemed to be one, a direct employee. We know now that that's not the case. This is jurisdictional, that the district court shouldn't have even had this case to With respect to the exception, when they go on to talk about the deeming of the extension of coverage for care of non-LCHC patients, what they specifically point to is a requirement that he provide per periodic hospital call or hospital emergency rule coverage. That is... Sorry. No, go ahead. That is not anywhere in the evidence on this record. I'm sorry. Thank you. Okay, and you say this is a jurisdictional point that can't be waived. Correct. Did you make any such argument to the district court? So, we did argue that his employment status and whether he was acting within the scope of his the only complaint we have here is the state court complaint and their allegation and their production of documents related to this that don't say any of the things that fit the exception only came later. Okay, okay. Thank you. Got it. I'll ask my colleagues whether they have any further questions. No, I think I'm all set. No, thank you. Okay, thank you. Thank you. Thank you, Judge. That concludes our arguments for today. This session of the Honorable United States Court of Appeals is now in recess until the next session of court. God save the United States of America and this Honorable Court. Counsel, please disconnect from the meeting.